# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

—————————————

№ 19-CV-3056 (RER)

—————————————

## CHANG

VERSUS

## LOUI AMSTERDAM, INC., *ET AL.*

—————————

**MEMORANDUM & ORDER**

September 29, 2022

—————————

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiff Andrew Chang ("Chang" or "Plaintiff") commenced this action on May 22, 2019, on behalf of himself and similarly situated individuals, against Loui Amsterdam, Inc. d/b/a Cap't Loui ("Loui Amsterdam"), Jihoon Jeong, ("Jeong"), Yong Woon Na ("Na"), and Jihoon Lee ("Lee") (collectively, "Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the New York Labor Law ("NYLL"), N. Y. Lab. Law §§ 650 *et seq.* (ECF No. 1 ("Compl."); ECF No. 21 ("Am. Compl.")). The parties have consented to the jurisdiction of the Court pursuant to 28 U.S.C. § 636(c). (ECF No. 37; Order dated 9/17/2021). Currently before the Court is Plaintiff's Motion for Summary Judgment (ECF No. 41), which Defendants oppose. After carefully reviewing the record, for the reasons set forth below, the motion is granted in part and denied in part.

1

# **BACKGROUND**

I.   Facts

   Plaintiff worked as a server at Cap't Loui, a restaurant in New York City, from March 8, 2018 until March 24, 2019. (ECF No. 41-2 ("Pl's 56.1") ¶¶ 1, 16, 19; ECF No. 41-8 ("Def's 56.1") ¶¶ 1, 15, 18). Defendants run Cap't Loui, and were all "engaged in the restaurant business" during the entire time of Plaintiff's employment there. (Pl's 56.1 ¶¶ 1–2; Def's 56.1 ¶¶ 1–2). Jeong, Na, and Lee own Loui Amsterdam, with Jeong owning 26% of the corporation, Na owning 58%, and Lee owning 16%. (Pl's 56.1 ¶ 4; Def's 56.1 ¶ 4).

   All three owners have authority to hire and fire employees (though Jeong does most of the hiring), and meet monthly to discuss restaurant matters, including issues surrounding "employee pay and pay practices." (Pl's 56.1 ¶¶ 6–7; Def's 56.1 ¶¶ 6–7). All three had input over hiring and set pay rates for employees. (Pl's 56.1 ¶ 13; Def's 56.1 ¶ 12). Jeong was a manager and was "involved in most aspects of the day-to-day operations of the restaurant[.]" (Pl's 56.1 ¶ 5; Def's 56.1 ¶ 5). Na, who set up human resources at Cap't Loui, created the first worker schedule when Cap't Loui opened, and thereafter created the employee schedules together with Jeong. (Pl's 56.1 ¶¶ 8–9; Def's 56.1 ¶¶ 8–9). Lee is a certified public accountant ("CPA") and handles the accounting and payroll for Cap't Loui. (Pl's 56.1 ¶ 10; Def's 56.1 ¶ 10). As a CPA, Lee was aware of New York's spread-of-hours requirements, and advised his co-owners regarding New York's minimum wage requirements each year. (Pl's 56.1 ¶¶ 11–12; Def's 56.1 ¶¶ 10–11).

   After Plaintiff responded to a job advertisement posted by Defendants, Jeong interviewed him and offered him the opportunity to train for a short period before hiring him to work at Cap't Loui. (Pl's 56.1 ¶¶ 17–18; Def's 56.1 ¶¶ 16–17). Plaintiff was thereafter hired as a server and completed his work as assigned by Defendants without using any specialized skills or his own equipment.

(Pl's 56.1 ¶ 19; Def's 56.1 ¶ 18). Plaintiff was required to report to work at certain times according to a schedule set by Jeong. (Pl's 56.1 ¶¶ 24–25; Def's 56.1 ¶¶ 23–24). According to records produced by the Defendants, Plaintiff began working at the restaurant on March 8, 2018. (Pl's 56.1 ¶ 16; Def's 56.1 ¶ 15; *see also* ECF No. 41-9 ("Time and Payroll Records") at D0000007). At that time, Cap't Loui had fewer than eleven employees; however, "[o]n or about May 9, 2018 . . . the restaurant began employing 11 employees." (Pl's 56.1 ¶¶ 14–15; Def's 56.1 ¶¶ 13–14; *see also* Time and Payroll Records at D0000016). In 2018 and 2019, Cap't Loui had gross receipts totaling over $500,000 each year. (Pl's 56.1 ¶ 3; Def's 56.1 ¶ 3).

The parties agree on all facts above, but disagree on the sequence of events that followed Plaintiff's hiring. Plaintiff alleges that "[w]hen he was hired, Defendants did not provide Chang with a written notice providing information including his rate of pay and basis therefore, how he would be paid, his pay day, the name of his employer, or the address of his employer." (Pl's 56.1 ¶ 20). Defendants dispute this, asserting that they provided Plaintiff with "written notice of his rate of pay" upon starting work at Cap't Loui. (Def's 56.1 ¶ 19). Specifically, Plaintiff alleges that "Na admitted that Defendants did not provide employees with a time-of-hire wage notice at the time-of-hire or when wages changed[,]" which Defendants dispute. (Pl's 56.1 ¶ 21; Def's 56.1 ¶ 20). In Na's deposition she said "We did not give them a notice. We showed them the notice. There is a line for a signature and we received the signature and we notified them with the minimum wage and minute wage is also posted at the restaurant." (ECF No. 41-4, Ex. 5 ("Na Depo. Tr.") at 48:8–13). The parties also dispute whether Plaintiff was given a tip credit notice upon hiring or afterwards. (Pl's 56.1 ¶¶ 22–23; Def's 56.1 ¶¶ 21–22). Specifically, Plaintiff points to Defendants' Responses to Requests for Admission, in which Defendants admit that they "failed to provide to Plaintiff any written notice that Defendant would apply a tip credit or allowance toward his

3

minimum wage at any time during from about March 8, 2018 until March 24, 2019." (ECF No. 41-4, Ex. 2 ("Pl's RFAs") ¶ 8; Ex. 3 ("Def's Resps. to RFAs") ¶ 8). Defendants argue that Jeong's deposition testimony supports a finding that Plaintiff received a wage notice when he started, along with his tax documents. (ECF No. 41-10 ("Jeong Depo. Tr.") at 94:17–22). However, Jeong's testimony did not include any details regarding whether that notice contained tip credit information.

The parties also dispute the days and hours Plaintiff worked. Plaintiff alleges he usually worked five to six days per week, working at least three days between Monday and Thursday weekly, and that Defendants "admit that [Plaintiff] worked 6 days per week from about March 18, 2018, until March 24, 2019 on more than one occasion." (Pl's 56.1 ¶¶ 26–28; *see also* Pl's RFAs ¶ 3, Def's Resps. to RFAs ¶ 3; ECF No. 41-5 ("Chang Aff.") ¶ 7). Defendants counter that Plaintiff "worked fewer hours and on fewer days than he contends and Loui Amsterdam's time records reflect that he worked fewer hours and on fewer days than he contends." (Def's 56.1 ¶¶ 25–27; Time and Payroll Records at D0000007–56; Jeong Depo. Tr. at 89:2–90:14, 93:17–94:16).

As to hours, the parties agree that, on workdays, servers are expected to work from 2:30 PM and work past closing at 11 PM (Pl's 56.1 ¶ 30; Def's 56.1 ¶ 29), and that employees generally work past Cap't Loui's closing time (Pl's 56.1 ¶ 33; Def's 56.1 ¶ 32). They also agree that Plaintiff worked more than forty hours in at least one week from March 8, 2018 through March 24, 2019. (Pl's 56.1 ¶ 36; Def's 56.1 ¶ 37). However, they disagree over the particular hours Plaintiff worked, with Plaintiff alleging that he worked from 2:30 PM until after midnight on weekdays, and Defendants asserting that Plaintiff worked less than that. (Pl's 56.1 ¶ 29; Def's 56.1 ¶ 28; *see also* Chang Aff. ¶ 7). Plaintiff alleges that he worked every Friday from at least 11 AM to 1 AM, and every Saturday and Sunday from at least 11 AM until midnight, working thirteen to fourteen

hours per weekend shift, which Defendants dispute, arguing that their records show Plaintiff working fewer hours than he claims. (Pl's 56.1 ¶¶ 31–32, 34; Def's 56.1 ¶¶ 30–31, 33; *see also* Chang Aff. ¶ 8; Time and Payroll Records at D0000007–56). Plaintiff alleges that he worked more than fifty hours per week and sometimes up to seventy hours per week, while Defendants argue he worked fewer than fifty hours per week. (Pl's 56.1 ¶¶ 35–36; Def's 56.1 ¶¶ 34–35; *see also* Chang Aff. ¶ 9).

Regarding documentation of Plaintiff's hours, Plaintiff argues that "Jeong testified that he could not remember the specific times Chang started and ended work" and "was not able to identify any document that could accurately show the specific times Chang started and ended work at Cap't Loui[,]" which Defendants dispute, alleging that Defendants' time records for Plaintiff are accurate. (Pl's 56.1 ¶ 38; Def's 56.1 ¶ 37). Plaintiff further alleges that although Cap't Loui installed a time clock during his employment there, he was told not to punch in when he first started working, and pay stubs were not based on the time clock data, rendering the time clock records inaccurate, though Defendants dispute this allegation. (Pl's 56.1 ¶¶ 39–40, 42; Def's 56.1 ¶¶ 38–39, 41). Plaintiff alleges that Defendants have not produced the time clock records because they re-assigned Plaintiff's personal identification number, which Defendants dispute. (Pl's 56.1 ¶ 41; Def's 56.1 ¶ 40).[1] Plaintiffs contend that "Jeong admitted that the employee schedule also does not accurately reflect the total hours worked by employees" referring to an exchange from

---

[1] Defendants' response does not specifically address the possible reassignment of Chang's personal identification number and states only, "Defendants dispute this paragraph. Chang worked fewer hours and on fewer days than he contends." (Def's 56.1 ¶ 40). Jeong's deposition testimony indicates that the identification number was "recycled" and given to another employee. (Jeong Depo. Tr. at 18:3-13, 61:17–62:11).

Jeong's deposition about a possible discrepancy in a particular shift Plaintiff worked,[2] but Defendants dispute this allegation. (Pl's 56.1 ¶ 43; Def's 56.1 ¶ 42).

As to Plaintiff's pay, the parties agree that Plaintiff was paid on an hourly basis, beginning at a rate of $8 per hour, and rising to $8.65 per hour on May 4, 2018, and then to $9 per hour on March 8, 2019. (Pl's 56.1 ¶¶ 44–47; Def's 56.1 ¶¶ 43–46). The parties agree that "[a]lthough Chang routinely worked overtime hours, Defendants failed to pay him overtime pay at a rate not less than one and one-half times his regularly hourly rate for the overtime" (Pl's 56.1 ¶ 48; Def's 56.1 ¶ 47), and that Plaintiff testified that "Jeong told him that he could not pay him overtime" (Pl's 56.1 ¶ 49; Def's 56.1 ¶ 48). Importantly, the parties agree that Defendants "failed to pay [Plaintiff] at a rate not less than one and one-half times his regularly hourly rate for the overtime (in excess of 40 in any given week) from January 6, 2019, until March 24, 2019." (Pl's 56.1 ¶ 51; Def's 56.1 ¶ 50). The parties also agree that "beginning on January 6, 2019, [Jeong] paid [Plaintiff] in cash for his overtime hours but only paid him at his regular hourly rate, not the required overtime rate." (Pl's 56.1 ¶ 52; Def's 56.1 ¶ 51; *see also* Time and Payroll Records at D0000091–96). However, the parties dispute whether Plaintiff received spread-of-hours compensation, with Plaintiff alleging he was not paid an extra hour of pay for each day that he worked more than ten hours, and Defendants alleging he was. (Pl's 56.1 ¶ 50; Def's 56.1 ¶ 49). The parties also disagree about the number of overtime hours that Plaintiff worked and the overall amount in that Defendants owe Plaintiff. (Pl's 56.1 ¶ 53; Def's 56.1 ¶ 52).

---

[2] *See* Jeong Depo. Tr. at 72:9–17 ("Q. And so if you follow the Andy row, so for on the Thursday I see eight, and then it was circled. No. 8 was circled. Does that mean that he was assigned eight hours for a Thursday shift? A. Yes. Q. Okay. So that's -- but it doesn't -- that doesn't mean that he worked eight hours that day, correct? A. Right.").

II.   <u>Procedural History</u>

Plaintiff commenced this action on May 22, 2019 (Compl.), and amended his complaint to add Na and Lee as defendants on October 14, 2020. (Am. Compl.). Defendants answered (ECF Nos. 11, 23) and discovery and motion practice followed. Discovery is now complete (*see* Order dated 10/06/2021) and the parties have consented to my jurisdiction. (ECF No. 37; Order dated 9/17/2021). Currently before the Court is Plaintiff's Motion for Summary Judgment on his claims for (1) unpaid minimum wages under the NYLL; (2) unpaid overtime wages under the FLSA and NYLL; (3) unpaid spread-of-hours wages under the NYLL; and (4) a time-of-hire wage notice violation under the NYLL. (ECF No. 41-1 ("Pl's Mem.") at 4–9). Plaintiff also seeks summary judgment on the issues of joint and several liability and liquidated damages. (*Id.* at 10–13).

## **LEGAL STANDARD**

I.   <u>Summary Judgment Under Federal Rule of Civil Procedure 56</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the court must "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in that party's favor." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011) (citing *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir.2010)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact[.]" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Once this burden is met, however, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial." *McFarlane*

*v. Harry's Nurses Registry*, No. 17-CV-06350 (PKC) (PK), 2020 WL 1643781, at *4 (E.D.N.Y. Apr. 2, 2020) (citing *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009)). To do so, the nonmoving party may not rely on "[a] mere 'scintilla of evidence'" but "'must come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (first quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003), then quoting *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002)); *see also Garcia v. Saigon Mkt. LLC*, No. 15-CV-9433 (VSB), 2019 WL 4640260, at *3 (S.D.N.Y. Sept. 24, 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) ("To defeat a summary judgment motion, the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'")

To satisfy their respective burdens, the parties may rely upon "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "Where the non-movant will ultimately bear the burden of proof at trial, he must present evidence to support the essential elements of his claims." *Hristova v. 3321 Astoria Inc.*, No. 17-CV-1633 (RER), 2018 WL 4006880, at *3 (E.D.N.Y. June 27, 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Absent evidence supporting the non-movant's claims, judgment should be entered for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323. But "[i]f the evidence is such that a 'jury could reasonably find for the nonmovant,' the motion must be denied." *Id.* (quoting *Anderson*, 477 U.S. at 252).

"In reviewing the evidence and the inferences that may reasonably be drawn, the court 'may not make credibility determinations or weigh the evidence.'" *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (quoting *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545–46 (2d Cir. 2010)). Indeed, "[i]t is a settled rule that credibility assessments, choices between conflicting

versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks, alterations, and citation omitted). However, "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment . . . . Mere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir.1995)).

## II.    The Burden of Proof Under the FLSA and NYLL

"[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254; *see also Mendez v. MCSS Rest. Corp.*, 564 F. Supp. 3d 195, 209–10 (E.D.N.Y. 2021) (quoting *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)) ("The evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions."). To establish liability under the FLSA, a plaintiff bears the initial burden to "prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel*, 643 F.3d at 361; *see also Cardenas v. Edita's Bar & Rest., Inc.,* No. 17-CV-5150 (RPK) (RML), 2021 WL 4480570, at *5 (E.D.N.Y. Sept. 30, 2021) (quoting *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 497 (S.D.N.Y. 2017), *aff'd*, 752 F. App'x 33 (2d Cir. 2018)) ("To establish liability on a wage claim under the FLSA, 'a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work.'"); *Chichinadze v. BG Bar Inc*., 517 F. Supp. 3d 240, 252 (S.D.N.Y. 2021) (citing *Grochowski v. Phoenix Constr.*, 318 F.3d 80,

87 (2d Cir. 2003)) ("An employee who brings an action under the FLSA or the NYLL for unpaid wages must prove that she performed the work and was not compensated properly for her time.").

Under the FLSA, employers have a non-delegable duty to maintain proper and accurate records of the hours their employees work. *Kuebel*, 643 F.3d at 363 (citing 29 U.S.C. § 211(c)). An employee "may easily discharge his burden" to establish liability "by securing the production of those records." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). However, "at summary judgment, if an employer's records are inaccurate or inadequate, an employee need only present 'sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference[.]'" *Kuebel*, 643 F.3d at 363 (quoting *Mt. Clemens*, 328 U.S. at 687). "Sufficient evidence may be established by 'recollection alone.'" *Feuer v. Cornerstone Hotels Corp.*, No. 14-CV-5388 (JFB) (SIL), 2020 WL 401787, at *9 (E.D.N.Y. Jan. 24, 2020) (quoting *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005)); *see also Kuebel*, 643 F.3d at 362 ("[I]t is well settled among the district courts of this Circuit, and we agree, that it is possible for a plaintiff to meet this burden through estimates based on his own recollection."). Once a plaintiff has met that low burden, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Mt. Clemens Pottery*, 328 U.S. at 687–88.

"Like the FLSA, the NYLL places the responsibility on an employer to maintain time records." *Mendez*, 564 F. Supp. 3d at 209 (citing N.Y. Lab. L. §§ 195(4), 196-a; *Chichinadze*, 517 F. Supp. 3d at 253). "Claims under the NYLL are governed by a burden-shifting framework similar to that utilized under the FLSA." *Id.* (citing *Chichinadze*, 517 F. Supp. 3d at 253). Under the NYLL, "[w]hen an employer fails to maintain accurate and complete records, the plaintiff's burden is to

10

submit evidence from which violations of the NYLL and damages may be reasonably inferred." *Id.* (citing *Chichinadze*, 517 F. Supp. 3d at 252). Like its federal counterpart, the NYLL shifts the burden to the employer upon a sufficient showing by the employee, but imposes "'a more stringent burden of proof' on the employer," requiring that it "establish 'by a preponderance of the evidence that in fact paid its employees' properly," and providing "that the employer cannot carry that burden 'by undermining the reasonableness of an employee's evidence.'" *Id.* (quoting *Chichinadze*, 517 F. Supp. 3d at 253); *see also Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722 (PK), 2020 WL 1694356, at *5 (E.D.N.Y. Apr. 7, 2020) ("Under the NYLL, the burden is on the employer to prove by a preponderance of the evidence that Plaintiff was properly compensated for the hours he worked.").

## **DISCUSSION**

### I.   Defendants are Employers Subject to the FLSA and NYLL

Plaintiff argues Defendants violated the FLSA and the NYLL by failing to pay Plaintiff minimum, overtime, and spread-of-hours wages, and by failing to provide a time-of-hire wage notice. (Pl's Mem. at 4–9). As a threshold matter, the Court must determine whether Defendants are employers and Plaintiff is an employee under the FLSA and NYLL, as there must be an employer-employee relationship to establish liability. *See Liu v. Millenium Motors Sports*, No. 17-CV-06438 (RPK) (RER), 2021 WL 4268136, at *3 (E.D.N.Y. May 24, 2021), *adopted by* 2021 WL 3463193 (Aug. 6, 2021); *Miguel v. Mi Bella Puebla Corp.*, No. 16-CV-01593 (SJ) (RER), 2017 WL 4838820, at *2 (E.D.N.Y. Sept. 6, 2017), *adopted by* 2017 WL 4838761 (Oct. 24, 2017).

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An employer is subject to the FLSA if the plaintiff-employee is either "(1) 'engaged in commerce or in the production of goods for

commerce,' (individual coverage)," or (2) employed in an "enterprise engaged in commerce or in the production of goods for commerce" whose "annual gross volume of sales made or business done is not less than $500,000" (enterprise coverage). 29 U.S.C. §§ 203(s)(1)(A)(i)-(ii), 206(a) and 207(a)(1)); *Kantor v. Air Atl. Med., P.C.*, No. 19-CV-03597 (EK) (ST), 2021 WL 3888067, at *4–5 (E.D.N.Y. July 7, 2021), *adopted by* 2021 WL 3884193 (Aug. 31, 2021). Courts in this Circuit "have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition by the FLSA[.]" *Mendez*, 564 F. Supp. 3d at 207 (quoting *Napoli v. 243 Glen Cove Ave. Grimaldi, Inc.*, 397 F. Supp. 3d 249, 263 (E.D.N.Y. 2019)).

Loui Amsterdam is an employer subject to the FLSA, as both of the enterprise coverage requirements are satisfied. With respect to the first requirement, the parties agree that the Defendants run a New York City restaurant called Cap't Loui. (Pl's 56.1 ¶¶ 1–2; Def's 56.1 ¶¶ 1–2). Although the parties' 56.1 statements do not expressly contemplate whether Cap't Loui is an "enterprise engaged in commerce," courts in this District routinely hold that restaurant employees handle items that travel in interstate commerce, such as ingredients for food or cleaning supplies, and that restaurants are therefore presumptively businesses engaged in commerce within the meaning of the FLSA. *See Bin Gao v. Jian Song Shi*, No. 18-CV-2708 (ARR) (JO), 2019 WL 3936810, at *4 (E.D.N.Y. Aug. 20, 2019) ("Though plaintiffs have not presented specific evidence to demonstrate that they could prove this element at trial, defendants do not argue that plaintiffs would not meet this prong of the enterprise coverage test. Thus, I assume for the purposes of this [summary judgment] motion that the restaurant is 'engaged in interstate commerce.'"); *Drice v. My Merchant Servs., LLC*, No. 15-CV-0395 (MKB) (MDG), 2016 WL 1266866, at *4 (E.D.N.Y. Mar. 4, 2016) (collecting cases inferring interstate-commerce element is satisfied from the nature of the employer's business), *adopted by* 2016 WL 1266948 (Mar. 31, 2016); *Hristova*, 2018 WL

12

4006880, at *8 ("Unless Defendants can show that every item in the restaurant from the cleaning supplies to the paper napkins to the beverages served were made in the state of New York, the presumption is that [the defendant restaurant] is 'engaged in commerce' under § 203(s)(1)(A)(i)."); *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 346 (E.D.N.Y. 2014) (noting that the "first prong" of enterprise coverage is "relatively easy to establish" and finding restaurant employee's allegation that he regularly handled supplies produced outside of New York sufficient to establish the first prong on summary judgment). Here, Defendants have not presented any evidence or argument to rebut the presumption that Cap't Loui was engaged in commerce. (*See* Def's Mem.; Def's 56.1). With respect to the second requirement to establish enterprise coverage, the parties agree that Cap't Loui had gross receipts totaling over $500,000 in 2018 and 2019. (Pl's 56.1 ¶ 3; Def's 56.1 ¶ 3). Accordingly, Loui Amsterdam is an employer subject to the requirements of the FLSA and NYLL.

Further, the individual defendants, Jeong, Na, and Lee, are "employers" under the FLSA and NYLL. Courts in the Second Circuit use an "economic reality" test to determine whether an individual is an employer. *See Irizarry v. Catsimatidis*, 722 F.3d 99, 104–05 (2d Cir. 2013). "An individual is an employer under FLSA if they: (1) make hiring and firing decisions; (2) supervise and control an employee's work schedule or employment conditions; (3) determine an employee's pay rate or method; and (4) maintain employment records." *Palaghita v. Alkor Cap. Corp.*, No. 19-CV-1504 (ARR) (RER), 2021 WL 4464121, at *8 (E.D.N.Y. Aug. 20, 2021), *adopted by* 2021 WL 4463483 (Sept. 29, 2021). Here, the parties agree that Jeong, Na, and Lee all have authority to hire and fire employees, have input over hiring, set pay rates for employees, and created work schedules. (Pl's 56.1 ¶¶ 6–9, 13; Def's 56.1 ¶¶ 6–9, 12). As such, they are considered employers under the economic reality test. *See Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 353

(E.D.N.Y. 2015) (granting summary judgment on an individual being an employer under the FLSA when he had the power to hire and fire employees and set employee compensation and schedules, and the record was neutral as to whether he maintained records).

Finally, the parties agree that Plaintiff was an employee at Cap't Loui. (Pl's 56.1 ¶¶ 1, 16, 19; Def's 56.1 ¶¶ 1, 16, 18). As a server, Plaintiff was a nonexempt employee under the FLSA. *See, e.g.*, *Fermin v. Las Delicias Peruanas Rest., Inc.,* 93 F. Supp. 3d 19, 32 (E.D.N.Y. 2015) ("[J]obs as waiter, kitchen helper/food preparer, cook and dishwasher all constitute non-exempt employment under the FLSA."). Since the NYLL "definition of employee is nearly identical to the FLSA standard" Plaintiff is considered an employee under the NYLL as well. *Palaghita,* 2021 WL 4464121, at *9.

Accordingly, I find that there is no genuine dispute that Defendants are employers subject to the provisions of the FLSA and NYLL in connection with Plaintiff's employment, making them jointly and severally liable for any damages owed to Plaintiff. *See, e.g.*, *Velez v. 111 Atlas Rest. Corp.*, No. 14-CV-6956 (MKB) (CLP), 2016 WL 9307471, at *14 (E.D.N.Y. Aug. 11, 2016) (citing *Moon v. Kwon*, 248 F. Supp. 2d 201, 236–37 (S.D.N.Y. 2002)) ("[I]ndividuals who are found to be 'employers' under the FLSA may be held jointly and severally liable to the plaintiff").

## II.   NYLL Minimum Wage Claims

Plaintiff argues that Defendants failed to pay Plaintiff the minimum wage under the NYLL because they claimed a tip credit against his wages without providing him with proper notice. (Pl's Mem. at 4–5).

Under NYLL § 652(1), "employers must pay employees at least minimum wage." *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 655 (E.D.N.Y. 2020). The parties agree that Plaintiff

was paid at a rate of $8 per hour starting on or about March 8, 2018, which increased to $8.65 per hour on May 4, 2018, and to $9 per hour on March 8, 2019. (Pl's 56.1 ¶¶ 44–47; Def's 56.1 ¶¶ 43–46). For the period that Defendants' business had more than eleven employees (Pl's 56.1 ¶¶ 14–15; Def's 56.1 ¶¶ 13–14), the applicable minimum wage under the NYLL was "$13.00 per hour on and after December 31, 2017," and "$15.00 per hour on and after December 31, 2018[.]" N.Y. Lab. Law § 652(1)(a)(i).[3] However, "[f]ederal and state tip credit provisions permit an employer to pay qualifying employees less than the minimum wage if they receive tips." *Mendez*, 564 F. Supp. 3d at 211 (citing 29 U.S.C. §§ 203(m), 206(a)(1); 12 N.Y.C.R.R. § 146-1.3; *Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015)).

As relevant here, the NYLL permitted New York City employers with eleven or more employees to pay food service workers a minimum cash wage of $8.65 per hour and claim a maximum tip credit of $4.35 per hour on and after December 31, 2017, and to pay food service workers a minimum cash wage of $10.00 per hour and claim a maximum tip credit of $5.00 per hour on and after December 31, 2018, provided that the tips the employee received plus his or her hourly cash wage was equal to or exceeded the applicable minimum wage, and provided that the employee was properly notified of the tip credit. 12 N.Y.C.R.R. §§ 146-1.3(a), (b)(1)(i).[4]

Proper notice under this provision is governed by 12 N.Y.C.R.R § 146-2.2, which requires that employers give "each employee written notice of the employee's regular hourly pay rate" including "the amount of tip credit, if any, to be taken from the basic minimum hourly rate," that such notice must be provided "prior to the start of employment" and "prior to any change in the

---

[3] For small employers "of ten or less employees" in New York City, the minimum wage was "$12.00 per hour on and after December 31, 2017" and "$13.50 per hour on and after December 31, 2018[.]" N.Y. Lab. L. § 652(1)(a)(ii).

[4] Small employers of ten or fewer employees were permitted to pay tipped food service workers a minimum cash wage of $8.00 per hour, and to claim a $4.00 tip credit on and after December 31, 2017. 12 N.Y.C.R.R. § 146-1.3(b)(1)(ii).

employee's hourly rates of pay," and that such notice must be communicated in English and in the employee's primary language. *Id.* § 146-2.2(a)–(b).[5] "The notice must also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate." *Id.* § 146-2.2(a); *Hristova*, 2018 WL 4006880, at *5. The employer must keep "[a]n acknowledgement of receipt signed by the employee . . . on file for six years," 12 N.Y.C.R.R. § 146-2.2(c), and "bears the burden to prove compliance with the notice requirement," *Mendez*, 564 F. Supp. 3d at 212 (citing 12 N.Y.C.R.R. § 146-2.2(d); *Gamero*, 272 F. Supp. 3d at 501). "An employer who fails to provide the required notice is liable for the difference between the full minimum wage rate and what the employee was actually paid." *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 554 (S.D.N.Y. 2017).

Here, Plaintiff argues that Defendants failed to meet the tip credit notice requirements and therefore owe Plaintiff the difference between the full minimum wage rate and what he was paid. (Pl's Mem. at 5). In particular, Plaintiff argues that Defendants have conceded that they failed to comply with the NYLL's tip credit written notice requirements. (*See* Pl's Mem. at 5; *see also* Pl's 56.1 ¶ 23; Def's Resps. to RFAs ¶ 8 (admitting that "Defendant Loui Amsterdam, Inc. failed to provide to Plaintiff any written notice that Defendant would apply a tip credit or allowance toward his minimum wage at any time during from about March 8, 2018 until March 24, 2019.")). An employer that acknowledges it failure to comply with the tip credit notice requirements is ineligible to claim a tip credit against an employee's wages. *See, e.g.*, *Leon Neri v. Abi Japanese Rest., Inc.*, No. 20-CV-581 (MKB), 2021 WL 6804252, at *8 (E.D.N.Y. Nov. 29, 2021) (granting summary

---

[5] While notice may be provided orally under the FLSA, *see Hristova*, 2018 WL 4006880, at *4 (citing U.S. Dep't of Labor, Wage & Hour Div., Fact Sheet #15 (Apr. 2018)), it must be provided in writing under the NYLL, *see Mendez*, 564 F. Supp. 3d at 212–13 (noting "NYLL regulations plainly require written notice" and collecting cases in which "courts have found that oral notice is insufficient").

judgment where defendants "acknowledge[d] that they never provided [plaintiffs] with written information about [d]efendants' tip policies[.]").

Defendants' memorandum of law is notably silent with respect to their eligibility to claim a tip credit and to Plaintiff's unpaid minimum wage claims, containing only a general statement that "[d]espite Plaintiff's assertions to the contrary, Plaintiff was paid more than the minimum wage for tipped employees[.]" (Def's Mem. at 2). "Even if it were possible to infer from a general statement of non-liability that defendants claim a tip credit under the FLSA, the 'argument would be so underdeveloped that the Court deems it waived.'" *Cardenas*, 2021 WL 4480570, at *7 (quoting *Molina v. Faust Goetz Schenker & Blee, LLP*, 230 F. Supp. 3d 279, 287 n.39 (S.D.N.Y. 2017)). Further, even if the argument was not waived, summary judgment as to liability is warranted where, as here, "Defendants have not identified sufficient evidence in the record indicating (1) that Plaintiff[] [was] explicitly informed of Defendants' intent to treat tips as satisfying part of the minimum wage obligation, (2) that Plaintiff[] understood that [his] mandated hourly rate was reduced because of the tips [he] received, or (3) that Plaintiff[] [was] provided with sufficient information from which [he] could have inferred the manner in which Defendants calculated the tip credit." *Garcia*, 2019 WL 4640260, at *9.

In their Local Rule 56.1 Statement, Defendants dispute that they failed to provide the requisite tip credit notice, asserting that they "provided Chang with written notice of his rate of pay when he started employment at Loui Amsterdam." (Def's 56.1 ¶ 22 (citing Jeong Depo. Tr. at 94)). To support this assertion, Defendants point to specific testimony from Jeong that Plaintiff was given "a notice indicating [his] wages" and that Plaintiff signed the notice along with a W-4 and I-90 "when he started." (Jeong Depo. Tr. at 94:17–22). While that testimony indicates Plaintiff was provided with notice of his hourly rate, it does not suggest he was explicitly provided the specific

information regarding Defendants' intent to claim a tip credit as required by 12 N.Y.C.R.R § 146-2.2. The Court's examination of additional deposition testimony regarding the notice purportedly provided to Plaintiff at the time-of-hire similarly does not give rise to any reasonable inference that Plaintiff was provided with the specific information that is required by the regulation. (*See* Jeong Depo. Tr. at 34:10–16 ("Q. So when you hired Mr. Chang, did you give him a notice that, Hey, this is your hourly rate, and this is the date you will first start? A. Yes, I did. We gave him notice. Q. I'm talking about a written notice and signed by the employees? A. I believe so, but it was lost."); Na Depo. Tr. at 44:25–45:5 (indicating Na's understanding that employees are paid "[t]he basic minute [sic] wage, sometimes little more than minimum wage, plus tips"); *id.* at 46:10–49:7 (indicating that the restaurant "showed [employees] the [time-of-hire wage] notice," "received the signature and . . . notified them with the minimum wage and minute [sic] wage is also posted at the restaurant."); *id.* at 57:19–58:25 (testifying that Loui Amsterdam provided written notice regarding tips by indicating the tip amount in each paycheck, but testifying that he was unaware of what a "tip credit" notice is).

Given the "strictly construed" nature of the tip credit notice provisions of the FLSA and NYLL, courts in this Circuit have found witness testimony regarding the notice provided to employees insufficient to create a triable issue of fact with respect to tip credit eligibility where that testimony does not establish that the plaintiff was provided all the information enumerated by the tip credit notice regulation or that plaintiff understood the manner in which a tip credit would be taken. *See Galvez v. 800 Ginza Sushi Inc.,* No. 19 Civ. 8549 (JPC), 2022 WL 748286, at *10 (S.D.N.Y. Mar. 11, 2022) (finding individual defendants' testimony insufficient where he "[did] not speak to whether [defendant] informed [p]laintiffs that [the restaurant] would take a tip credit from their wages," and "did not . . . testify that he also described how tipping interacted with [p]laintiffs'

wages," noting that "[e]mployers must state the intent to take a tip credit *specifically*, and not just, for example, inform employees that they will receive wages augmented by tips"); *Garcia*, 2019 WL 4640260, at *9 (quoting *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 289–90 (S.D.N.Y. 2011)) (finding "minimal, conclusory evidence . . . regarding the notice [defendants] provided of their intent to take a tip credit 'is insufficient to create a triable issue of fact as to whether the notice requirement has been satisfied, as it compels only the conclusion that the tipped employees knew they were tipped and that minimum wage obligations exist'"); *Hristova*, 2018 WL 4006880, at *4 (finding "[d]efendants have not produced evidence to support their claim that the tip credit notice was proper" as required by the FLSA and NYLL where "[t]he manager who hired the [p]laintiff testified that he had her sign the WTPA wage notice, but there is no evidence that he ever explained the tip credit statute to the [p]laintiff," and where plaintiff testified that "she never understood how a tip credit works until she met with her lawyer" and "claim[ed] no one explained either the tip credit or the tip pooling system."). *Cf. Mendez*, 564 F. Supp. 3d at 213 (finding testimony from two individual defendants sufficient to create genuine dispute of material fact regarding their entitlement to tip credit despite lack of documentary evidence where witnesses specifically testified that compliant tip credit notice was provided but the restaurant's records were destroyed in a hurricane).

To the extent Na's testimony suggests that employee paystubs satisfy the tip credit notice requirements by indicating the tip amount allocated to each paycheck, (*see* Na Depo. Tr. at 57:19–58:25), those documents indicate Plaintiff's regular hourly rate, the "total wages" paid, and the "total tips" paid (Time and Payroll Records at D0000060–89), but do not include the "amount of tip credit . . . to be taken from the basic minimum hourly rate," and contain no statement explaining "that extra pay is required if tips are insufficient to reach the basic minimum hourly rate," 12

N.Y.C.R.R. § 146-2.2(a). Accordingly, there is no genuine dispute that "defendants did not provide adequate notice under the NYLL by distributing such paystubs to their employees." *Cardenas*, 2021 WL 4480570, at *10.

As Plaintiff has demonstrated that he was paid below the statutory minimum wage, Defendants have waived the argument that they were entitled to claim a tip credit, and Defendants have otherwise failed to put forward evidence to suggest that the notice purportedly provided to Plaintiff included all of the information required under the NYLL's tip credit notice provisions, Plaintiff is entitled to summary judgment as to liability on his NYLL minimum-wage claims. However, as explained further below, genuine disputes of material fact regarding the number of hours that Plaintiff worked require that a factfinder determine any damages owed to Plaintiff for his underpaid minimum wage claims. *See Galvez*, 2022 WL 748286, at *13–14 (granting summary judgment on liability as to minimum wage claims, but not damages, where "[f]ully ascertaining damages due to [p]laintiffs will . . . require more precise calculations, and the consideration of the reliability of [defendants'] [t]ime [r]ecords and [p]laintiffs' testimony"); *Cardenas*, 2021 WL 4480570, at *11 ("[G]enuine disputes of fact about how many hours the . . . plaintiffs worked preclude summary judgment as to damages on those plaintiffs' NYLL claims.").

III.   Overtime Claims Under FLSA and NYLL

Under the FLSA, employers must pay employees for hours worked in excess of forty hours in a given week at a "rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1); *see also Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 409 (E.D.N.Y. 2017) (same) (citing *Young v. Cooper Cameron Corp.*, 586 F.3d 201,

204 (2d Cir. 2009)). The NYLL uses a nearly identical standard. 12 N.Y.C.R.R. §§ 142-2.2; *see also Rojas*, 268 F. Supp. 3d at 409 (citing N.Y. Lab. Law § 650 *et seq.*)).[6]

Plaintiff alleges that Defendants violated the FLSA and NYLL by failing to pay Plaintiff overtime wages when he worked more than forty hours in a given week. (Pl's Mem. at 5–7; ECF No. 41-4 Ex. 7 ("Chang Depo. Tr.") at 37:24–38:2). Defendants admit that Plaintiff worked overtime and was not compensated at a rate of one-and-a-half times his regular rate for at least some of the overtime he worked. (Pl's 56.1 ¶¶ 37, 48–49, 51–52; Def's 56.1 ¶¶ 36, 47–48, 50–51; Jeong Depo. Tr. at 18:14–22 (explaining Jeong paid Plaintiff "overtime in cash at a regular rate" instead of the proper 1.5X overtime rate); Chang Depo. Tr. at 38:18–21 (same); Time and Payroll Records at D0000091–96 (overtime wage payment receipts from January 6, 2019, to March 30, 2019, reflecting payment at the regular hourly rate)). Accordingly, there is no genuine dispute of material fact that Defendants violated the overtime provisions of the FLSA and NYLL, and Plaintiff is entitled to summary judgment as to liability on his overtime claims. *See Cardenas*, 2021 WL 4480570, at *7 (alterations omitted) (quoting *Estrella v. P.R. Painting Corp.*, 356 F. App'x 495, 497 (2d Cir. 2009)) ("If an employer 'failed to compensate employees properly for even one hour of overtime, liability is established, and anything else relates only to damages.'"). However, the parties dispute the number of overtime hours worked and the amount of unpaid overtime wages owed which precludes summary judgment as to damages.

Plaintiff argues that the Court should enter summary judgment in his favor with respect to his overtime claims because Defendants admit they he was not properly paid overtime wages from

---

[6] "Where a valid tip credit has been taken, 'the minimum overtime cash wage is the employee's regular rate of pay before subtracting any tip credit, multiplied by one and one-half, minus the tip credit.'" *Garcia*, 2019 WL 4640260, at *10 (quoting *Inclan*, 95 F. Supp. 3d at 498); *see also* 29 U.S.C. § 203(m); 29 C.F.R. §§ 531.60, 778.5; 12 N.Y.C.R.R. § 146-1.4). However, as explained above, Defendants were not entitled to claim a tip credit against Plaintiff's wages.

January 6, 2019, until March 24, 2019 (Def's 56.1 ¶ 50; *see also* Time and Payroll Records at D0000091–96), and because, for prior pay periods, "[t]he only evidence of hours worked produced by Defendants—Chang's pay stubs and the employee schedule—do not accurately reflect the time Chang worked" (Pl's Mem. at 7). In particular, Plaintiff argues that Defendants should have produced time clock records that were created during his employment, and that even if those records were produced, he regularly performed off-the-clock work such that those records would be inaccurate. (*Id.*). Accordingly, Plaintiff argues that Defendants' records are inaccurate, and that his recollections and estimates regarding the number of overtime hours he worked should be used to calculate damages. (*See* Chang Aff. ¶¶ 7–9 (testifying that Plaintiff typically worked five to six days per week, including at least three days between Monday and Thursday from 2:30 PM past midnight, Fridays from 11 AM until after 1 AM, and working Saturdays and Sundays from 11 AM until after midnight; that Plaintiff worked up to fourteen hours per day on weekends, and that Plaintiff recalls working more than 70 hours per week)).

However, the record contains evidence to rebut Plaintiff's recollection regarding the number of hours worked, such that Plaintiff has not established the absence of genuine disputes of material fact as to his overtime damages claims. Specifically, Defendants have produced employee schedules and payroll records which indicate that Chang did not work the hours that he recalls (Time and Payroll Records at D0000016–49) and have produced witness testimony supporting the accuracy of those records (Jeong Depo. Tr. at 89:16–90:14 (describing the records as "mostly" accurate and as "not a schedule" but "what [Plaintiff] did."). Further, Jeong testified that the records sent to Loui Amsterdam's accountants to prepare the payroll were corrected to account for any off-the-clock work Chang performed before he punched in. (*See* Jeong Depo. Tr. at 62:15–

63:8). The accuracy of the hours recorded in the time records produced by Defendants is a question for the trier of fact.

The record also contains testimony from Defendants indicating that Plaintiff was properly paid overtime wages for some periods, but not for others, and it is unclear whether on those occasions he was paid at the regular rate or one-and-a-half times that rate. (*Compare* Jeong Depo. Tr. at 18:14–22 (explaining Jeong paid Plaintiff "overtime in cash at a regular rate" instead of the proper overtime rate) *with id.* at 68:15–69:11 (testifying that for at least some period of time, Plaintiff was paid overtime at a rate of time and a half); *see also* Na Depo. Tr. at 39:22–40:13 (testifying his understanding that Plaintiff was properly paid at the 1.5X overtime rate for hours worked in excess of forty per week); Time and Payroll Records at D0000057–89 (payroll records indicating Plaintiff was paid one and a half times his regular rate for overtime hours for certain periods)). The factual issues regarding Plaintiffs' overtime hours, and the rate of pay for those overtime hours that were actually paid, cannot be resolved without weighing the evidence and making credibility determinations, which the Court is not empowered to do at the summary judgment stage.

Accordingly, while "[a]t a minimum, [D]efendants are liable for overtime compensation for those weeks where they admit their own liability," *Cardenas*, 2021 WL 4480570, at *7, a jury must determine any additional damages that Plaintiff may be entitled to for underpaid or unpaid overtime claims, *see, e.g.*, *Galvez*, 2022 WL 748286, at *14 (granting summary judgment on liability as to overtime claims, but not damages, where "[g]iven the considerable disagreement among the parties as to the amount of underpaid overtime, any damages in this regard also must be resolved at trial"); *Cardenas*, 2021 WL 4480570, at *11 (holding "[f]actual disputes preclude damages calculations for all plaintiffs' FLSA claims" and "genuine disputes of fact about how many hours the . . . plaintiffs worked preclude summary judgment as to damages on those

plaintiffs' NYLL claims."); *Mendez*, 564 F. Supp. 3d at 217 (denying summary judgment on FLSA overtime claims where there are disputes about the hours plaintiffs worked, where plaintiffs "have not submitted admissible estimates of their hours and wages," and where "the accuracy of [defendants' proffered time records] is a question for the trier of fact").

IV.   <u>Spread-of-Hours Claims</u>

Plaintiff moves for summary judgment on his claim that Defendants failed to pay him spread-of-hours wages. (Pl's Mem. at 8). Defendants argue that Plaintiff did not work as many hours as he claims he did, and that Plaintiff was compensated for an extra hour of work whenever his shift exceeded ten hours. (Def's Mem. at 4–5).

Under the NYLL, "[o]n each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." 12 N.Y.C.R.R. § 146-1.6(a); *see also* 12 N.Y.C.R.R. § 142-2.4 ("[A]n employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which . . . the spread of hours exceeds 10 hours[.]"). The "spread of hours" is defined as "the length of the interval between the beginning and end of an employee's workday," including "working time plus time off for meals plus intervals off duty." 12 N.Y.C.R.R. § 146-1.6.

Plaintiff recalls routinely working thirteen to fourteen hours per day without receiving spread-of-hours pay (Chang Aff. ¶¶ 8, 10), and argues that Defendants' failure to maintain accurate time records renders his recollection sufficient for the purposes of establishing liability. Defendants dispute Plaintiff's allegation, pointing to Jeong's testimony that the restaurant paid its employees spread of hours compensation before January 2019 as evidence that Plaintiff was properly paid an extra hour of pay for each day that he worked more than ten hours. (Def's 56.1 ¶ 49 (citing Jeong Depo. Tr. at 56)). However, Jeong's conclusory assertion of compliance with the spread-of-hours

24

requirements does not, by itself, create a genuine dispute of material fact. *See Galvez*, 2022 WL 748286, at \*14, \*14 n.19 (citing *Burgos v. Craig*, 307 F. App'x 469, 470 (2d Cir. 2008) (holding individual defendant's conclusory testimony that he understood and complied with spread-of-hours requirements was insufficient to "establish[] Plaintiffs' exact hours [or] indict[] the reasonableness of the inferences to be drawn from [plaintiffs'] testimony" to defeat summary judgment motion). *Cf. Mendez*, 564 F. Supp. 3d at 218 (emphasis added) (plaintiffs are "not entitled to summary judgment on their spread-of-hours claims [where defendant] testified that defendants paid spread-of-hours compensation [] *and identified where spread-of-hours compensation appeared on various records*.").

Beyond Jeong's conclusory testimony that employees were properly paid spread-of-hours compensation, Defendants have not come forward with specific evidence sufficient to create a genuine dispute of material fact as to Plaintiff's receipt of spread-of-hours compensation. Indeed, the records Defendants have produced contain references to Plaintiff's "regular" wages, "overtime" wages, and tips, but contain no identifiable references to spread-of-hours compensation. (*See* Time and Payroll Records at D0000057–89). Defendants' pay records also reflect payment of regular wages for the hours calculated each week, but do not account for an extra hour of pay on those weeks that Plaintiff is listed as having worked a shift of ten hours or more. (*Id.* at D0000057–89).[7]

---

[7] Defendants also point to Jeong's testimony to assert that, after January 6, 2019, schedules were changed to eliminate shifts longer than ten hours, such that Plaintiff would not be entitled to spread of hours pay after that date. (Def's Mem. (citing Jeong Depo. Tr. at 56)). Although this testimony is relevant to damages rather than to liability, the Court notes that Defendants' time and payroll records, if credited, indicate that Plaintiff, along with several other employees, worked shifts in excess of ten hours per day during that period. (*See* Time and Payroll Records at D0000050–56 (listing thirteen days on which Plaintiff alone purportedly worked more than ten hours per day)).

Because Defendants have failed to identify any evidence to rebut Plaintiffs' recollection that he was not paid spread-of-hours compensation beyond conclusory testimony asserting that they complied with NYLL's spread-of-hours provisions, the Court grants summary judgment as to liability on Plaintiff's spread-of-hours claims under the NYLL. However, as with the minimum wage and overtime claims, Defendants' proffered time and payroll records are sufficient to create a genuine dispute of material fact as to the number of hours that Plaintiff worked, and the number of days that Plaintiff worked more than ten hours per day. *See Cardenas*, 2021 WL 4480570, at *13 (denying summary judgment on damages for plaintiffs' spread-of-hours claims where "a genuine factual dispute exists regarding how many eligible shifts those plaintiffs worked for the purpose of calculating damages"). Accordingly, a trial is required to determine Plaintiff's spread-of-hours damages.

V.   <u>Wage Notice Claims</u>

Plaintiff argues that Defendants failed to provide a time-of-hire wage notice in violation of the NYLL, and that "Defendants have not produced any evidence showing that such a notice was ever created let alone provided to [Plaintiff]." (Pl's Mem. at 8–9). In response, Defendants argue that Defendant Jeong's testimony creates a genuine dispute of material fact as to the provision of the time-of-hire wage notice. (Def's Mem. at 5–6 (citing Jeong Depo. Tr. at 94)).

Section 195(1) of the NYLL obligates an employer to give a wage notice to an employee at the time of hiring. *See* N.Y. Lab. L. § 195(1). That notice must include, among other things, "the rate or rates of pay and basis thereof," information as to whether pay will be "by the hour, shift, day, week, salary, piece, commission, or other," "allowances," "wage supplements," "the name of the employer," and "the telephone number of the employer." *Id.* The notice must also "state the regular hourly rate and overtime rate of pay" for "employees who are not exempt from overtime

26

compensation." *Id*. Further, the employer must "obtain from the employee a signed and dated written acknowledgment, in English and in the primary language of the employee, of receipt of this notice, which the employer shall preserve and maintain for six years." *Id.* If an employee is not given such notice "within ten business days of his or her first day of employment . . . he or she may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur," up to a total of five thousand dollars. N.Y. Lab. L. § 198(1-b); *see also Ji v. Jling Inc.*, No. 15-CV-4194 (SIL), 2022 WL 1080989, at *9 (E.D.N.Y. Apr. 11, 2022) (citations omitted) ("Failure to comply with this requirement will result in a civil damages award of $50 per day up to a total of $5,000.").[8]

Plaintiff claims that he was not provided a time-of-hire wage notice. (Pl's Mem. at 8–9). In addition to his own affidavit testifying that he was not provided with such notice (Pl's 56.1 ¶ 20 (citing Chang Aff. ¶ 4)), Plaintiff argues that Na "admitted that Defendants did not provide employees with a wage notice at the time-of-hire or when wages changed" (Pl's 56.1 ¶ 21 (citing Na Depo. Tr. at 47:18–49:7)). However, Na's testimony indicates that employees were informed of the minimum wage when they were hired, but that notice was not given in "letter form." (*See*

---

[8] An employer's "complete and timely payment of all wages . . . to the employee who was not provided notice" serves as an affirmative defense to a wage notice claim. N.Y. Lab. L. §§ 198(1-b); *see also Ying Ying Dai*, 490 F. Supp. 3d at 661 ("Under Section 198(1-b), employers have an affirmative defense if they pay their employers properly."). Employers may also be shielded from liability if they can demonstrate that they "reasonably believed in good faith that they were not required to provide the employee with notice." *Marin v. Apple-Metro, Inc.*, No. 12-CV-5274 (ENV) (CLP), 2020 WL 6157011, at *5 (E.D.N.Y. Oct. 21, 2020) (alterations omitted) (quoting N.Y. Lab. L. § 198(1-b)). However, because Defendants have not raised either affirmative defense in their Answer (ECF No. 11), Amended Answer (ECF No. 23), or in opposition to the instant motion, the Court deems those defenses waived. *See Curry v. City of Syracuse*, 316 F.3d 324, 330–31 (2d Cir. 2003) (citing Fed. R. Civ. P. 8(c); *Pangburn v. Culbertson*, 200 F.3d 65, 68 n.1 (2d Cir. 1999)) (noting affirmative defenses "normally must be pled in a timely manner or . . . may be waived"); *Meehan v. E. Lyme Bd. of Educ.*, 104 F.3d 352 (2d Cir. 1996) (quoting *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993) ("In the absence of a showing of prejudice, however, an affirmative defense may be raised for the first time at summary judgment."); *Gonzalez v. Allied Concrete Indus., Inc.*, 575 F. Supp. 3d 336, 342 n.2 (E.D.N.Y. 2021) (considering affirmative defense despite failure to properly plead in answer where previously assigned judge "implicitly ruled that defendants could raise this question in the context of damages."). Further, as explained above, Defendants have not fully compensated Plaintiff under the FLSA and NYLL such that they have not made "complete and timely payment of all wages" as a matter of law.

Na Depo. Tr. at 46:10–48:17 ("We did not give them notice. We showed them the notice. There is a line for a signature and we received the signature and we notified them with the minimum wage and minute wage is also posted at the restaurant . . . . We did not give them a written notice, a letter."); *see also id.* at 54:22–55:9 (explaining that the written notice provided to employees would "notify them with the minimum wage and when they will start, and I believe that's what was given when the start.")).[9] Jeong similarly testified that Plaintiff was provided with written notice when he was hired of his "hourly rate" and "the date [he would] first start." (Jeong Depo. Tr. 34:10–35:16, 94:17–22). Based on Jeong's testimony, Defendants argue that Plaintiff was provided with a time-of-hire wage notice, and was given "written notice of his rate of pay when he started at Loui Amsterdam." (Def's 56.1 ¶¶ 19–20; *see also* Def's Mem. at 5–6 (citing Jeong Depo. Tr. at 94)).

Although the testimony from Na and Jeong is sufficient to raise a genuine dispute as to whether Plaintiff received "written notice of his rate of pay" (Def's 56.1 ¶ 19), Defendants do not dispute Plaintiff's assertion that he was not provided written notice of "the basis [for his hourly rate], how he would be paid, his pay day, the name of his employer, or the address of his employer" (Pl's 56.1 ¶ 19), and do not point to testimonial or documentary evidence to suggest that information was provided. Accordingly, while some of the information required by Section 195(a) may have been provided at the time-of-hire, the undisputed facts indicate that other required information was not. The record also confirms that Defendants failed to comply with the six-year recordkeeping requirement under the regulation. (*See* Jeong Depo. Tr. at 34:10–16 (noting that Chang's time-of-

---

[9] Na also testified that the minimum wage was displayed on a poster at the restaurant. (*See* Na Depo. Tr. at 48:8–49:7). However, posted notices generally do not satisfy the individualized notice requirements of NYLL § 195(1)(a). *See Alves v. Affiliated Care of Putnam, Inc.,* No. 16 Civ. 1593 (KMK), 2022 WL 1002817, at *14 (S.D.N.Y. Mar. 30, 2022) (citations omitted) (posted notices "which set forth the applicable wage-and-hour laws" are insufficient to satisfy individualized notice requirements of the regulation); *Pineda v. Frisolino, Inc.,* No. 15 Civ. 3774 (GBD), 2017 WL 3835882, at *12 n.15 (S.D.N.Y. Aug. 29, 2017) (same); *see also Chichinadze,* 517 F. Supp. 3d at 259 ("[E]ven were the Court willing to accept this representation, Defendants have not submitted the posters themselves, let alone any details about the content of those posters that would enable the Court to assess their sufficiency.").

hire wage notice acknowledgement was "lost"); *id.* at 35:17–23 ("Q: [S]o when you hired Andrew Chang, you didn't have that [wage notice] document? A: So it was – we did, but we didn't think it was that important, so we didn't keep that document.")). Thus, there is no genuine dispute that Defendants failed to fully comply with the time-of-hire notice requirements of Section 195(a)(1). *See Galvez*, 2022 WL 748286, at *16 (citing *Zhang v. Great Sichuan on 3rd Ave., Inc.*, 334 F. Supp. 3d 621, 623 (S.D.N.Y. 2018)) (finding "no material dispute that [d]efendants failed to comply with section 195(a)(1)'s requirements regarding wage notices at hiring" where defendant "testified that the handwritten documents [provided to plaintiffs] contained rates of pay and schedules, but not that the notices were written in Plaintiffs' primary languages or included much of the required information, including, for example, allowances deducted from wages and dates of payments," and "testified that he gave documents to his employees and retained no records."); *Garcia*, 2019 WL 4640260, at *5 (granting summary judgment on wage notice claims where notices were provided but undisputedly deficient).

Accordingly, Plaintiff is entitled to summary judgment on his time-of-hire wage notice claims under NYLL § 198(1-b). As Plaintiff was undisputedly "an employee of Cap't Loui from about March 8, 2018, until March 24, 2019," (Def's 56.1 ¶ 15), which is 381 days, Plaintiff is entitled to the maximum statutory penalty of $5,000 for the violation.

VI.   <u>Liquidated Damages</u>

To the extent he is entitled to damages, Plaintiff argues that he is entitled to obtain liquidated damages as a matter of law. (Pl's Mem. at 10–11). Defendants do not address Plaintiff's request for liquidated damages in their opposition brief. (Def's Mem.).

"Both the FLSA and the NYLL provide for liquidated damages." *Cardenas*, 2021 WL 4480570, at *13 (quoting *Villanueva v. 179 Third Ave. Rest Inc.*, 500 F. Supp. 3d 219, 239

(S.D.N.Y. 2020), *adopted by* No. 16 Civ. 8782 (AJN) (RWL), 2021 WL 2139441 (May 26, 2021)).

"Under the FLSA, a district court is generally required to award a plaintiff liquidated damages

equal in amount to actual damages." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d

132, 150 (2d Cir. 2008) (citing 29 U.S.C. § 216(b)). Indeed, a court must award liquidated damages

under the FLSA "unless the employer demonstrates that they acted in good faith, in which case

the decision to impose liquidated damages is discretionary." *Cardenas*, 2021 WL 4480570, at *13

(quoting *Villanueva*, 500 F. Supp. 3d at 239; citing 29 U.S.C. § 260); *see also Polanco v.

Bensonhurst Rest. Corp.,* No. 16-CV-1085 (ILG) (CLP), 2021 WL 1254445, at *3 (E.D.N.Y. Apr.

5, 2021) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)) ("It is within

the Court's discretion to 'deny an award of liquidated damages where the employer shows that,

despite the failure to pay appropriate wages, the employer acted in subjective "good faith" and had

objectively "reasonable grounds" for believing that the acts or omissions giving rise to the failure

did not violate the FLSA.'").

Similarly, the NYLL provides for liquidated damages in the amount of "one-hundred percent

of the total wages due" which must be awarded "'unless the employer [can] prove its good faith.'"

*Polanco*, 2021 WL 1254445, at *3 (citing *Inclan*, 95 F. Supp. 3d at 505; quoting *Chowdhury v.

Hamza Express Food Corp.*, 666 F. App'x 59, 60 (2d Cir. 2016)); *see also Cardenas*, 2021 WL

4480570, at *13 (quoting *Chichinadze*, 517 F. Supp. 3d at 258) ("To avoid mandatory liquidated

damages under the FLSA and NYLL, an employer must prove that it 'took active steps to ascertain

the dictates of the [law] and then act[ed] to comply with them," and "that its good-faith actions

were objectively reasonable.").[10] "The Second Circuit has described the employer's burden of

---

[10] "Liquidated damages are not available for violations of the NYLL wage notice and statement provisions." *Jian Hua Li*, 2020 WL 1694356, at *14.

proving good faith as 'a difficult one to meet' and has held that 'double damages are the norm, single damages the exception.'" *Haifeng Xie v. Sakura Kai I Inc.*, No. 17-CV-7509 (ILG) (JO), 2019 WL 1568756, at *8 (E.D.N.Y. Apr. 11, 2019) (quoting *Reich v. S. New England Telecommunications Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)). "The Second Circuit has also rejected the view that the absence of subjective malice or bad faith, on its own, is sufficient to invoke the exception." *Id.* (citing *RSR Sec. Servs.*, 172 F.3d at 142; *Reich*, 121 F.3d at 71).

"A plaintiff cannot recover liquidated damages under both the FLSA and the NYLL for the same course of conduct during the same period." *Cardenas*, 2021 WL 4480570, at *13 (citing *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018)). "In cases where plaintiffs could obtain liquidated damages under either the FLSA or the NYLL, courts have awarded liquidated damages under whichever statute provides the greater recovery." *Polanco*, 2021 WL 1254445, at *3 (citing *Xin Long Lin v. New Fresca Tortillas, Inc.*, No. 18-CV-3246 (RJD) (RER), 2019 WL 3716199, at *7 (E.D.N.Y. May 1, 2019), *adopted by* 2019 WL 3714600 (May 28, 2019)).

Applying those standards here, the Court finds that Plaintiff is entitled to summary judgment on his liquidated damages claim under the NYLL. The undisputed facts and the record indicate that the Defendants either did not take steps to ascertain the requirements of the NYLL, or knew of those requirements but failed to act to comply with them. (Pl's Mem. at 11 (citing Pl's 56.1 ¶¶ 10–12, 51); *see also* Def's 56.1 ¶¶ 10–11, 50). In particular, Jeong testified at his deposition that he learned of the minimum wage on the Department of Labor website, and although he did not seek professional advice in setting employees' hourly rates or in monitoring compliance, he did speak to "headquarters" about such issues. (Jeong Depo. Tr. at 29:2–30:15, 33:18–20). Jeong's testimony also indicates that he understood the overtime regulations, but paid Chang's overtime wages "in cash, but not the overtime rate, just paid him a regular hourly rate." (Jeong Depo. Tr. at

39:5–18, 55:11–56:7). Similarly, Lee testified that he understood the minimum wage requirements and spread of hours requirements, and told Loui Amsterdam "about the minimum wage or supplied them with the minimum wage poster," but did not seek or provide other professional advice regarding wage requirements. (Lee Depo. Tr. at 13:14–16:14, 18:9–11 26:5–20). Na testified that he consulted with Lee and Jeong regarding pay rates and requirements, and that he understood government regulations regarding pay requirements based on letters from accountants and from the Department of Labor. (Na Depo. Tr. 12:15–14:6, 20:10–21:21, 39:22–40:5).

Although there is ample evidence to indicate that these employers were aware of the applicable wage requirements, Defendants have not come forward with any evidence to indicate that they believed in good faith that they complied with those requirements, or that such good faith belief was objectively reasonable. Therefore, summary judgment as to liquidated damages is appropriate. *See Ying Ying Dai*, 490 F. Supp. 3d at 662 (internal citations omitted) ("[T]here is no evidence that [defendant] had a good faith basis to believe that underpaying the plaintiffs complied with the law. He was aware that there were laws governing minimum wage and overtime . . . but did not pay the plaintiffs in accordance with those laws."); *Xie*, 2019 WL 1568756, at *8 ("In this case, Defendants have not met their 'difficult' burden. To the contrary, the evidence suggests that Defendants were aware of law's requirements and did not comply with them."); *Polanco*, 2021 WL 1254445, at *4 (quoting *RSR Sec. Servs.*, 172 F.3d at 142; citing *Rojas*, 268 F. Supp. 3d at 412) ("Although [defendant] testified that he had knowledge of certain overtime and spread-of-hours requirements when he became an owner of [the restaurant], the defendants have also failed to show that they took 'the steps necessary to ensure their practices complied' with the FLSA and the NYLL").

Accordingly, to the extent Plaintiff is entitled to recover unpaid wages, Plaintiff is entitled as a matter of law to recover liquidated damages equal to one-hundred percent of those wages.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is granted in part and denied in part. Plaintiff's motion is granted as to liability with respect to Plaintiff's minimum wage claim under the NYLL, overtime claims under the FLSA and NYLL, spread-of-hours claim under the NYLL, and time-of-hire wage notice claim under the NYLL. Plaintiff's motion is otherwise denied pending further proceedings with respect to damages.

SO ORDERED.


/s/ Ramon E. Reyes, Jr.
RAMON E. REYES, JR.
United States Magistrate Judge

Dated: September 29, 2022
Brooklyn, NY